---

## PEOPLE ex rel. BARTON v. BRANNON et al.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. MUNICIPAL CORPORATIONS (§ 126*)—OFFICES—POWER TO CREATE.

Under Greater New York Charter (Laws 1901, c. 466) § 56, requiring the board of aldermen on the recommendation of the board of estimate and apportionment to fix the salary of officers, and section 692, subd. 5, authorizing the trustees of Bellevue and Allied Hospitals to appoint employés subject to civil service laws and rules, the power to create the position of inspector of construction of Bellevue and Allied Hospitals is in the trustees, but the board of estimate and apportionment and the board of aldermen have authority to fix the salary, and the power to fill the office may be exercised when the salary has been fixed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 298–300; Dec. Dig. § 126.*]

2. MUNICIPAL CORPORATIONS (§ 157*)—REMOVAL OF VETERAN FROM OFFICE.

The position of inspector of construction of Bellevue and Allied Hospitals is limited to the particular hospital specified in the order appointing the inspector, and, where the work at such hospital has been finished so that an inspector of construction is not necessary, the veteran holding the position under civil service rules cannot continue in the position, and the trustees of the Bellevue and Allied Hospitals need not discharge a competent person acting as inspector of another building to make place for him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 300, 347; Dec. Dig. § 157.*]

Appeal from Special Term, New York County.

Application by William E. Barton for a writ of mandamus against John W. Brannon, as president, and others, composing the Board of Trustees of Bellevue and Allied Hospitals, to reinstate applicant as a general inspector of construction of the Bellevue and Allied Hospitals. From a judgment of the Special Term (125 N. Y. Supp. 691) granting the application, defendants appeal. Reversed, and proceedings dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Loyal Leale, for appellants.
George P. Breckenridge, for respondent.

INGRAHAM, P. J. It appeared that the president of the board of trustees of Bellevue and Allied Hospitals, on March 29, 1904, sent a letter to the Comptroller asking that the board of estimate and apportionment authorize the establishment of the position of inspector of construction, department of Bellevue and Allied Hospitals, at a salary of $2,000 a year; and also sent a request to the secretary of the board of estimate and apportionment requesting that board to authorize the establishment of the position of general inspector of construction at a salary of $2,000 a year. In pursuance of this request, the board of estimate and apportionment recommended to the board of aldermen, in accordance with the provisions of section 56 of the Greater New York Charter, that the salary of the position of general inspector of construction in Bellevue and Allied Hospitals be fixed at the rate of $2,000 per annum; and subsequently, on April 29, 1904, the board of aldermen concurred in said resolution and fixed the salary of that position at that amount.

By subdivision 5 of section 692 of the charter (chapter 466, Laws 1901) it is provided that the trustees were to administer the moneys appropriated for said hospitals, subject to the general provisions of the act relative to the audit and payments of claims; and said board should have power to appoint, and at pleasure to remove, such superintendents, medical officers, subordinate officers, and other employés as may be necessary for the efficient management and conduct of said hospitals, subject to the civil service laws and the rules and regulations of the municipal civil service commission. By section 56 of the Charter it was provided:

"It shall be the duty of the board of aldermen, upon the recommendation of the board of estimate and apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury other than day laborers, and teachers, examiners, and members of the supervising staff of the department of education."

It appeared, therefore, that neither the board of estimate and apportionment nor the board of aldermen had power to create this position. That power was vested in the trustees. The board of estimate and apportionment and the board of aldermen, however, had authority to fix the salary of the officer or employés appointed by the defendants, and, they having fixed the salary of an inspector of buildings at $2,000, the defendants had then power to make an appointment. There was a competitive examination for that position in which the relator and others took part. Subsequently, and on the 21st day of April, 1905, the board of trustees passed a resolution appointing the relator as a veteran whose name appeared first on the list, as general inspector of construction for the new wing of Gouverneur Hospital, from May 1, 1905, at a salary of $2,000 a year. The relator was notified of that appointment and continued as such inspector until the Gouverneur Hospital was completed. On June 9, 1905, the relator was transferred by the defendants to the Harlem

Hospital as general inspector of construction of that hospital, and continued as such inspector until the Harlem Hospital was completed. On January 29, 1907, the board of trustees passed a resolution that the services of the relator, inspector of construction, be dispensed with, dating from February 1st, the Harlem Hospital being practically completed, and notice of that fact was given to the relator by the secretary of the defendants, and such action of the board was apparently acquiesced in by the relator. On April 30, 1907, the board of trustees passed a resolution that the relator, former general inspector of construction at the Harlem Hospital, be appointed to the same position for the new training school for women nurses, and the relator was duly notified of his appointment to that position. The relator accepted this employment and acted as such inspector until February 23, 1910, when the board of trustees passed a resolution suspending the relator until work on the new training school was resumed, and a notice to that effect was given to the relator, which, apparently, was acquiesced in. On March 9, 1910, notice was given the relator that, as the building operations had been resumed on the new Bellevue Training School for Women Nurses, he was reappointed to duty as general inspector of construction at that building. On May 3, 1910, the board passed a resolution to dispense with the services of the relator in view of the fact that the building to which he was appointed as inspector of construction had then been completed, and on May 4th notice of that fact was given to the relator.

The only position to which the relator was appointed was that of general inspector of buildings of the particular hospitals specified in the resolution appointing him. The resolution specified the particular hospital or building to which he was appointed. The appointment must come from the trustees, and, while the position to which the salary is attached by the resolution passed by the board of estimate and apportionment and approved by the board of aldermen was that of general inspector, the position to which the relator was appointed was one that was created by the resolutions of the board of trustees of the Allied Hospitals, and that was limited to the particular hospital which he was appointed to inspect. As soon as the work at the particular hospital was finished, so that an inspector of construction was not necessary, it would seem to follow that the position became unnecessary, and the relator could not then claim to remain in the position, receiving the compensation fixed for that position, when there was no work for him to do. It is not claimed but that the training school for women nurses is now completed, and that relator's services as inspector are no longer required for that building. What the relator claims, however, is, in some way he was appointed a general inspector of construction of all buildings, and therefore, as a veteran, he was entitled to be retained in the department and to be transferred to any building that was in course of construction, although such a transfer compelled the discharge of an inspector of construction who had been in charge of that other building up to the time that the relator's services were no longer needed in relation to the par-

ticular hospital to which he had been appointed. It seems that the only buildings in course of construction by the trustees are three buildings connected with the new Bellevue Hospital, and that for these buildings one Frees was appointed inspector of construction, on March 1, 1906, who has ever since been employed as such inspector for such buildings. It is quite evident that, having been inspector from the commencement of the buildings, it would be very confusing and against the interest of the city to displace him and appoint the relator to such position.

That it was not the duty of the trustees to make such a transfer seems to have been settled by the Court of Appeals in Chappel v. Lindenthal, 173 N. Y. 524, 66 N. E. 407. In that case the relator had been appointed a bridge tender for a particular bridge. The work upon that bridge having been completed, he was discharged, and he then claimed the right to be appointed upon other bridges, irrespective of the question as to whether or not that would involve the discharge of persons there employed. In the Court of Appeals it was said:

"His (the relator's) claim that, notwithstanding the positions of bridge tenders upon this bridge had been abolished, he was entitled, as of right, to be reinstated in his position, or that some other person, employed in a similar capacity elsewhere in the department, should be discharged, would result, if granted, in accomplishing too gross an injustice. It would result, either in imposing upon the municipality the burden of the expense of maintaining the relator in his position, when the work for which he had been employed had ceased, or in removing some employé elsewhere, perhaps better, or equally, qualified and faithful, to make a vacancy for the relator. We will not impute to the Legislature the intention to sanction such unnecessary injustice, or the absurdity of intending to saddle an unnecessary employé upon the city."

In Matter of Breckenridge, 160 N. Y. 103, 54 N. E. 670, it was said:

"The legislative intent was to secure the retention in the public service of the veteran, who is thrown out of office by its abolition, 'in such position as he may be fitted to fill, receiving the same compensation therefor'—which seems necessarily to imply that a vacancy in such a position must exist."

As, therefore, the position to which the relator was appointed was abolished because of the fact that the building, the construction of which he was appointed to supervise, was finished, the city had no more need of his services in that position, and the defendants were not bound to discharge a competent person who had been inspector of another building to make a place for the relator.

The question as to the effect of the acceptance by the relator of a position of state architect upon his proceeding for reinstatement is not necessary to be determined. I think, however, that in view of our decision in Sutliffe v. City of New York, 132 App. Div. 831, 117 N. Y. Supp. 813, it would only have the effect of reducing his claim for damages by reason of his discharge, if the discharge had been illegal. We there held that the same rule would apply in the case of an illegal discharge by the city of one of its employés as was applicable in a case of an unauthorized discharge of an employé in

any other case; that in such case the discharged employé was bound to obtain such employment as he could, pending the time of his reinstatement. If the relator was bound to do all he could to obtain employment during this period, his employment by the state, city, or private individual would not affect his right to reinstatement.

For the reasons before stated, however, the order appealed from must be reversed, with $10 costs and disbursements, and the proceeding dismissed, with $50 costs.

LAUGHLIN, CLARKE, and MILLER, JJ., concur.

SCOTT, J. I concur in the result reached by Mr. Justice INGRAHAM, and should concur in his opinion without reservation, but for the intimation contained therein, and which, as the learned writer himself says, is unnecessary to the decision, that the acceptance of another office or position in the public service did not amount to an acquiescence by relator in his discharge. While it may be that the position to which relator seeks reinstatement does not fall strictly under the classification of an office, it is one of the positions mentioned in the opinion in Sutliffe v. City of New York, 132 App. Div. 831, 117 N. Y. Supp. 813, as possessing many of the attributes of an office, including a prima facie right, upon reinstatement, to compensation during the period of separation from the public service. The general rule of law, applicable to such a case, is that the acceptance by one who holds a municipal office of a second office incompatible therewith operates ipso facto as a resignation of the first, and the same rule has been expressly enacted, as to the city of New York, by section 1549 of the Greater New York Charter.

In my opinion therefore the acceptance by relator of a position in the state service was a relinquishment of any claim to reinstatement in the city service.

In all other respects, I concur in the prevailing opinion.