PEOPLE ex rel. SCHOENWALD v. TREMAN, Superintendent of Public Works.

PEOPLE ex rel. DENNER v. SAME.

(Supreme Court, Special Term, Erie County. March, 1912.)

1. STATES (§ 53*)—EMPLOYÉS—DISMISSAL—CIVIL SERVICE—"LABORER."

Const. art. 5, § 3, provides for the appointment of assistant superintendents of public works, for the filling of vacancies in such office, etc., and declares that all other persons employed in the care and management of canals, except collectors of tolls, and those in the department of the state engineer and surveyor, shall be appointed by the inspector of public works, and be subject to suspension or removal by him. Re-

lator, a Civil War veteran, was appointed bridge tender by a deputy surveyor in 1901, working during the season of canal navigation; his services being dispensed with and his pay stopped during the closed season. He was employed for successive seasons until the spring of 1911, when on his reporting for duty his position was refused him. The position of bridge tender is not an office created or recognized by statute, being left to the discretion of the superintendent of public works and the agreement of the parties; nor is the term of employment or compensation regulated by legislation. The position was placed in the noncompetitive class, was exempt from examination, and classed as "laborer." *Held* that, the word "laborer" being ordinarily used to designate persons whose employment is uncertain as to time and terminates when the works on which they are engaged ends, as distinguished from men who are employed for a definite or fixed term from year to year, relator was therefore subject to removal without the preferring of charges or the granting of a hearing.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 58; Dec. Dig. § 53.*

For other definitions, see Words and Phrases, vol. 5, pp. 3952–3968; vol. 8, p. 7700.]

2. STATES (§ 53*)—EMPLOYÉS—DISCHARGE OF VETERAN.

The statute against summary discharge of a veteran without a hearing does not forbid his removal when the position is abolished, or when his services are dispensed with for want of work or in the interest of economy, or where the term has expired.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 58; Dec. Dig. § 53.*]

3. STATES (§ 53*)—EMPLOYÉS—VETERAN—DISCHARGE—LOCK TENDER.

Relator, a veteran, was employed as a canal lock tender in 1894, and for four years worked only during the navigation season; but from 1900 to the time of his discharge he worked continuously summer and winter at a certain lock, receiving $45 a month during the canal season, and was carried on the pay rolls as a "lock tender," and for the rest of the time he received $10 a month and was on the roll as "watching guard lock." The lock at which he was stationed opened into Lake Erie, and it was necessary to have a person on watch there at all times. *Held*, that relator's employment was continuous, and therefore he was not subject to discharge without the filing of charges and a hearing.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 58; Dec. Dig. § 53.*]

Proceedings by the People, on the relation of Albert Schoenwald and of Barney Denner, for mandamus to compel the reinstatement of relators to positions formerly held by them in the Canal Department of the State of New York, from which they were dismissed without the filing of charges and without hearing. Proceedings dismissed in the case of Schoenwald, and writ granted in the case of Denner.

Parton Swift, for relators.
Henry W. Killeen, for defendant.

WHEELER, J. Each of these proceedings was instituted by the relators, praying for a peremptory writ of mandamus to restore them to the positions formerly occupied by them in the Canal Department of the State of New York, from which they contend they were illegally dismissed, without charges and without a hearing. Both relators are veterans of the Civil War, and invoke the statutes of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

state providing that in the case of veterans they shall not be discharged from the public service, except on charges and after a hearing.

Schoenwald was appointed a bridge tender by the deputy superintendent of canals in the year 1901, and assigned work on one of the canal bridges in the city of Buffalo. He worked in this position of bridge tender for the season of canal navigation, and in the fall, when the canal closed, his services were dispensed with and his pay stopped. The following spring he watched the newspapers, and learned when the canal was to open, and reported to the deputy superintendent, and was again put to work on his old job. This continued each year until the fall of 1910, when the canal closed for the season. In the spring of 1911 Schoenwald again reported for duty and was refused his old position. He advised the superintendent of the fact that he was a veteran and claimed the statutory right to his old place. This was refused. No charges against Schoenwald were ever preferred, and no hearing had. When he was originally appointed bridge tender, nothing was said as to the term of his appointment, and nothing was said about that matter at any of the subsequent times when he resumed work as a bridge tender. The case of Barney Denner is somewhat different in its facts, as will be noted later in the opinion.

Upon the presentation of the relators' petitions at Special Term, the defendant appeared and raised issues of fact which necessitated the trial of the issues before a jury. The two proceedings came before a Trial Term of the court, and after hearing the evidence the trial judge directed a verdict in favor of the defendant. The parties now come before the Special Term, and the counsel for relators moves for a new trial in each case upon a case and exceptions, and it was stipulated that such motion might be heard at Special Term, and for the purposes of the motion the stenographer's minutes of the trial be taken to be the case and exceptions.

The real question to be passed on by this court is whether the hiring of the relator was for the period of navigation of each year, or whether the relator is to be deemed appointed for an indefinite term, performing his duties simply so long as the canal remained open for business. If the hiring was simply for the season's work, and there was a re-employment when canal navigation opened in the spring, then, concededly, the relator's connection with the department terminated when the season's operations ended. If, on the other hand, he is to be regarded as holding over from season to season, then as a veteran, entitled to the benefit of the act forbidding a veteran's discharge from public employment except on charges and after a hearing, the relator has a standing in court for the relief asked. As the facts are practically undisputed, we are of the opinion the question presented is purely a question of law, and no issue of fact remained for disposition by the jury.

[1] In the first place, it is to be observed that the position of bridge tender is not an office created or recognized by statute. No fixed compensation is provided for the place. The amount to be paid for the services rendered is left to the discretion of the superintendent of

public works and the agreement of the parties. Neither the term of employment nor the compensation to be paid is in any way regulated by legislation. The relator was employed, like the great mass of others engaged in operating the canals, under the general authority given by the Constitution of the state, providing as follows:

"Section 3, article 5. The superintendent of public works shall appoint not more than three assistant superintendents, whose duties shall be prescribed by him, subject to modification by the legislature, and who shall receive for their services a compensation to be fixed by law. They shall hold their office for three years, subject to suspension or removal by the superintendent of public works, whenever, in his judgment, the public interests shall so require. Any vacancy in the office of any such assistant superintendent shall be filled for the remainder of the term for which he was appointed by the superintendent of public works; but in case of the suspension or removal of any such assistant superintendent by him, he shall at once report to the governor, in writing, the cause of such removal. *All other persons employed in the care and management of the canals*, except collectors of tolls, and those in the department of the state engineer and surveyor, *shall be appointed by the superintendent of public works, and be subject to suspension or removal by him.*"

This power was exercised, in the main, by the superintendent through the division superintendents, whose acts were subject to the approval of the state superintendent of public works. The relator was, therefore, simply an employé of the department.

In the state civil service rules, adopted by the state civil service commission and having the force of law, the position of bridge tender in the department of public works is placed in the noncompetitive class, exempt from examination, and is classed as "laborer." While this classification is not necessarily controlling on the question as to whether the position is to be deemed held under a continuing employment, it is a circumstance that bridge tenders fall within the designation of "laborers," a name ordinarily used to designate persons whose employment is uncertain as to time, and whose employment terminates when the work on which they engage ends, as distinguished from men hired for a stated and fixed term, or whose employment is continuous from year to year.

We think it the fair inference, to be gathered from all the circumstances of this case, that there was no purpose or intention on the part of the department of public works to employ the relator longer than each season's work lasted; that when the canal closed, and the necessity for his services ended, his employment ended. The fact that he was put to work on the same job the succeeding spring when the canal opened did not change the legal effect of the dismissal when the canal closed in the fall. When the relator was put to work in the spring, it was tantamount to a re-employment by the superintendent, to be terminated in the fall for want of work.

[2] It is perfectly well established that the provision of the statute against the summary discharge of a veteran without a hearing does not forbid his removal when the position is abolished, or where his services are dispensed with for want of work and in the interest of economy. Matter of Jones v. Willcox, 80 App. Div. 171, 80 N. Y. Supp. 420, and cases cited; People ex rel. Steers v. Board of

Health, 86 App. Div. 522, 83 N. Y. Supp. 800, affirmed 176 ·N. Y. 602, 68 N. E. 1123. Or where the term has expired. Matter of Tiffany, 179 N. Y. 455, 72 N. E. 512.

Perhaps the nearest case to that presented on the record here is that of Matter of Kenney, 52 App. Div. 385, 65 N. Y. Supp. 204, where a peremptory writ of mandamus was asked to restore the relator to the position of a sewer inspector. It appeared the relator was appointed an inspector on a sewer in process of construction; that when cold weather came work was suspended with the sewer uncompleted. The relator's services were then dispensed with. The following spring work on the sewer was resumed, and the relator asked to resume his work as inspector, but the writ was denied. In the case of People v. Williams, 140 App. Div. 723, 125 N. Y. Supp. 583, it was held that, where a veteran was employed in a state department for no stated term, he might be discharged when the funds available for the payment of his salary have been exhausted. To the same effect is the case of Matter of Barton, 141 App. Div. 295, 126 N. Y. Supp. 47. In the matter of Vincent v. Cram, 27 Misc. Rep. 158, 57 N. Y. Supp. 771, it was held that recreation pier attendants on piers open only from May to November may be removed, and that the statute requiring the statement of reasons for such removal had no application. The court very pertinently said that the test is whether the dismissal was because of the fact that the services of an employé were no longer needed, as distinguished from a case of a removal to make way for another.

We are unable to reach any other conclusion, so far as the relator Albert Schoenwald is concerned, than that his appointment was for the season of canal navigation, and that his employment at the end of each season was legally terminated, and therefore he has no standing to compel his reinstatement to his former position.

[3] The case of the relator ·Barney Denner is somewhat different from that of Schoenwald. Denner was first employed in the year 1894 as a lock tender. For some four years he worked only during the season of navigation. From the year 1900 up to the time of his discharge he worked continuously, summer and winter, at lock 72. During the season of canal navigation, he received $45 per month, and was carried on the pay rolls of the department as a "lock tender." For the rest of the time he received $10 per month, and was carried on the pay rolls as "watching guard lock." The lock in question opened into the waters of Lake Erie, and it was necessary to have at least one person there to watch them all the time.

The relator testified that after navigation closed it was still necessary from time to time to lock boats through the lock, and to keep it free from rubbish, just the same as in summer. This work he also did in summer; but it is manifest that his duties were greater and more active in summer than in winter, and he had comparatively little to do when the canal was closed. Nevertheless it does appear that his employment was continuous and without break, and he was never formally discharged from service. The only difference

seems to have been that on the pay rolls in summer he was called a "lock tender," and after the canal was closed his work was designated as "watching guard lock," with duties very much the same, but with less pay because of less work.

The difference in the amount of compensation, although a circumstance to be given its due consideration, is not necessarily controlling. Neither is the name given the incumbent. The test is, it seems to us, Were the duties performed of the same general character, although the labor was less in amount, and although the particular acts to be done might be only occasional while navigation was closed, although contant during the summer months? To illustrate: In the summer months the passage of boats through the lock is constant, and many a day. After navigation closes the passage of boats is only occasional, and yet, so far as the evidence in this case is concerned, a man is required at the locks both summer and winter to operate the locks, and to keep the feed free from rubbish.

There does not appear to have been any formal discharge of the relator as lock tender and re-engagement of him as watchman. So far as appears, he continued right along in the service of the state without anything being said on the subject. We are of the opinion that, when the relator's services were discontinued in the spring of 1910, he was still within the employ of the state, and entitled to the benefit of formal charges and a hearing before dismissal from his position. His services are not claimed to have been discontinued because of lack of work or lack of funds.

We think the relator Denner entitled to be reinstated to his position as lock tender. In making this disposition of the case, we feel that we are but carrying out the provisions and purposes of the statute for the benefit of veterans of the late Civil War.

It is, however, contended that this court, at Special Term, cannot grant a final order in this case, but that all it has the authority to do is to grant a new trial of the issues framed upon which the case was tried in the first instance. The testimony returned presents no disputed questions of fact. It is, in our opinion, simply a question of law whether, on the undisputed evidence, the relator is entitled to the relief asked for or not. We can see no advantage or necessity of remitting the case again for trial before a jury, and can discover nothing in the cases cited which requires that action. We shall therefore dispose of all the issues at this time, as follows:

In the Schoenwald case, the proceedings are dismissed, with costs.

In the Denner case, let the peremptory writ asked for be issued, with costs of the proceeding.