## STATE EX REL. WILLIAM M. BOYD v. FRANK W. MATSON, AS COMMISSIONER OF PUBLIC SAFETY AND ANOTHER.[1]

March 29, 1923.

No. 23,422.

**Soldiers Preference Act not unconstitutional.**

1. Chapter 192, Laws of 1919, the Soldiers Preference Act, does not violate the equality provisions of the Constitution, nor the provision that the subject of the act shall be expressed in its title.

**Does not abrogate civil service rules.**

2. This act does not authorize the removal of a prior appointee to make a place for a soldier, nor abrogate civil service rules giving precedence to appointees in the order of their appointment.

**Position held by appointee may be abolished and his service ended.**

3. A provision that an appointee shall be removed only for cause does not prevent municipal officials from abolishing the position which he holds and thereby terminating his service, if their action be taken in good faith and not merely for the purpose of ousting him.

**Soldier's preference right not superior to civil service rules.**

4. The number of telegraph operators in the police and fire alarm bureau of the city of St. Paul was reduced from 16 to 11, thereby abolishing 5 of these positions. By virtue of the civil service rules these reductions must be made by laying off operators in the inverse order of their appointment; and a soldier's preference right does not entitle him to be preferred over a prior appointee who takes precedence over him under the civil service regulations.

[1] Reported in 193 N. W. 30.

Upon the relation of William M. Boyd the district court for Ramsey county granted its alternative writ of mandamus directing Frank W. Matson, as Commissioner of Public Safety, and Jesse Foot, as City Comptroller and Civil Service Commissioner, to reinstate petitioner as operator in the Bureau of Police and Fire Alarm Telegraph. Relator's demurrer to the answer and return was sustained, Sanborn, J. From the order sustaining the demurrer, respondents appealed. Affirmed.

*Carlton F. McNally* and *Arthur A. Stewart*, for appellants.

*O. H. O'Neill,* for respondent.

TAYLOR, C.

Prior to October 23, 1922, the city of St. Paul employed 16 operators in its police and fire alarm telegraph bureau, but on that date reduced the number of such operators from 16 to 11. In consequence of this reduction in number, 5 of the former operators were discharged, and the relator was one of the 5 so discharged. Appointments to these positions and removals therefrom are regulated and governed by civil service rules established by and pursuant to the city charter. These rules provide:

"Whenever it becomes necessary in any bureau, for lack of work or funds or for other causes, to reduce the force in any employment, the persons serving in such employment shall be laid off in the inverse order of their certification and appointment, the last one appointed to be the first laid off."

The relator was certified and appointed to his position in 1918. Four of the operators who were retained in service were not certified or appointed to their positions until 1921. The relator, setting forth these facts among others, procured the issuance of an alternative writ of mandamus requiring the commissioner who had discharged him and the civil service commissioner to reinstate him or show cause why they had not done so. They interposed an answer in which they admitted substantially all the allegations of the writ, but alleged that the 4 operators appointed in 1921 who had been retained, "were honorably discharged veterans of the war between

the United States and Germany." A demurrer to this answer was sustained and the defendants appealed.

It is conceded, in effect, that the relator was entitled to retain his position and should be reinstated unless honorably discharged soldiers, who were appointed to similar positions at a later date, are given a preference right over him by chapter 192 of the Laws of 1919. The relator contends that this act contravenes the Constitution in that the subject of the act is not expressed in its title, and in that it is special and class legislation granting to one class of citizens privileges and immunities not granted to others. He further contends that if the act be valid, it does not take away the seniority rights created by the civil service rules, nor authorize the discharge of a prior appointee for the purpose of retaining a later appointed soldier.

The act is entitled:

"An act to amend chapter 14, Laws 1918, which chapter 14 is entitled, 'An act to amend chapter 499, Laws of Minnesota, 1917, relating to regulation of employment and removals in public departments and upon public works in the state of Minnesota, and the counties, cities and towns thereof, relating to state, judicial, county, township, city and town officers.' "

The relator concedes that if the title had ended at the word "thereof," it would properly express the subject of the act; but insists that the clause, "relating to state, judicial, county, township, city and town officers," is restrictive, and that the act violates the constitutional requirement because it is not confined to matters relating to these officers. We cannot sustain this contention. Effect must be given to the preceding clause as well as to this clause; and if the title, taken as a whole, can fairly and reasonably be construed so as to sustain the validity of the act, that construction will be adopted. Dunnell, Minn. Dig. and Supps. § 8906, et seq. Doubts are to be resolved in favor of the validity of the act. But the purpose of the clause in question can hardly be said to be doubtful. It was not added to restrict the preceding clause, but to point out that the act would affect the officers mentioned.

It is generally recognized that the legislature does not violate the equality provisions of the Constitution by providing that honorably discharged soldiers and sailors, whose qualifications for positions in the public service are equal to the qualifications of other applicants therefor, shall be preferred over other applicants in making appointments to such positions. 5 R. C. L. 613, and cases there cited; 6 R. C. L. 395, and cases there cited. The rulings in this state are in harmony with the rulings elsewhere. State v. Miller, 66 Minn. 90, 68 N. W. 732; State v. Copeland, 74 Minn. 371, 77 N. W. 221. The present statute was considered in State ex rel. Nelson v. Board of Public Welfare, 149 Minn. 322, 183 N. W. 521, and in Johnson v. Pugh, 152 Minn. 437, 189 N. W. 257, but its validity was not questioned in those cases.

It is urged that under the act as it now reads a soldier applicant who can perform the duties of a position must be appointed to it, although other applicants are far better qualified and would be much more efficient, and that this discrimination violates the equality rule of the Constitution. A statute which prescribed one rule for determining the competency of a soldier applicant and a different rule for determining the competency of other applicants would doubtless violate the equality provision of the Constitution. This question is given extended consideration in the cases cited in Rulling Case Law referred to above. It is only where the soldier applicant possesses the qualifications for the position required of other applicants that he may be preferred over other applicants. We think this act need not be construed as establishing a different rule, and find no sufficient reason for holding it invalid.

Section 1 of the act provides:

"That in every public department and upon all public works in the state of Minnesota and the counties, cities, and towns thereof * * * honorably discharged soldiers, sailors and marines from the army and navy of the United States * * * shall be entitled to preference in appointments, employment and promotion over other applicants therefor * * * and when such soldier, sailor or marine shall apply for appointment or employment under this act, the officer, board or person whose duty it is, or may be, to appoint or

employ such person to fill such position or place, shall before appointing or employing anyone to fill such position or place, make an investigation as to the qualifications of said soldier, sailor or marine for such place or position, and if he is a man of good moral character, and can perform the duties of said position applied for by him, as hereinbefore provided, said officer, board or person shall appoint said soldier, sailor or marine to such position or place of employment."

This section provides that when an appointment is to be made to a position in the public service, and an honorably discharged soldier, sailor or marine is an applicant for the position, the appointment shall be given to him if he be qualified to perform the duties of the position. It also provides that he shall have a preference right to employment or promotion over other applicants therefor. This undoubtedly means that where, aside from his military service, he and other applicants have an equal right to be retained in employment or to be promoted, he shall be preferred over such other applicants. The act does not authorize, nor purport to authorize, the removal of a prior appointee to make a place for a soldier; and cannot reasonably be construed as abrogating the civil service rules governing tenure of office.

Section 2 of the act provides that no honorably discharged soldier, sailor or marine holding a position in the public service shall be removed therefrom except for incompetency or misconduct shown after a hearing on stated charges. The purpose of this section is to take away from the appointing officials the arbitrary power, ordinarily possessed, to remove such appointees at pleasure; and to restrict their power of removal to the making of removals for cause. But it is well settled that statutes forbidding municipal officials from removing appointees except for cause are not intended to take away the power given such officials over the administrative and business affairs of the municipality, and do not prevent them from terminating the employment of an appointee by abolishing the office or position which he held, if the action abolishing it be taken in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position. State v. Edwards, 40 Mont. 287, 106 Pac.

695, 20 Ann. Cas. 239, and cases cited in that case and in the note appended to it in 20 Ann. Cas. at page 246. The municipal authorities may abolish the position held by an honorably discharged soldier and thereby terminate his employment, notwithstanding the so-called veteran's preference act. In re Breckenridge, 160 N. Y. 103, 54 N. E. 670; People v. Williams, 140 App. Div. 723, 125 N. Y. Supp. 583; Matter of Barton v. Braunan, 141 App. Div. 295, 126 N. Y. Supp. 47; People v. Leo, 233 N. Y. 173, 135 N. E. 234. That act does not give a soldier the right to require that the position he holds be continued for his benefit, nor that a nonsoldier be discharged to make a place for him. But, where several appointees hold the same position and perform the same work and only a part of them are to be retained, it gives him the right to be preferred over a nonsoldier, their rights being equal in other respects.

In the present case, the relator appointed in 1918, had a preference right under the civil service laws superior to the preference right of the soldiers who applied for employment in 1921; that is, he could not be removed to make a place for one of them. Their preference right at the time they applied was merely a right to be preferred over other applicants in appointments to be made then or thereafter. The statute undoubtedly gives them a right to be retained in service in preference to nonsoldiers appointed at the same time, or who do not take precedence over them under the civil service rules; but we find nothing in the act indicating that the legislature intended to do away with the civil service rules, nor that the seniority rights created by such rules shall give way to the preference rights given by the act. Both are created by legislative authority, and as both can stand together and be given a fair and reasonable operation, effect must be given to both. The civil service rules provide, in effect, that the several positions in question, instead of standing on a parity, shall take precedence in the order in which the holders of the positions were appointed. The soldier's preference act provides that where, but for his military service, a soldier and other applicants or appointees would stand on a parity, the soldier shall take precedence. Reducing the force from 16 to 11, is in effect abolishing 5 positions. By force of the civil service regulations, the positions so abolished were those held by the 5 operators last appointed.

The relator was not one of these 5 and his position was not one of those abolished. By force of the soldier's preference act, the positions held by the soldiers could not be abolished so long as a position held by a nonsoldier, appointed at the same time or later, was continued. This accords to the soldiers the same preference right they had when they made their original applications—a right to be preferred over all others not in the service before they applied—but not a right to have old employes removed to make places for them. We reach the same conclusion reached by the learned trial court, and the order appealed from is affirmed.