STATE EX REL. WALTER M. EVENS v. CITY OF DULUTH.[1]

No. 30,482.

October 25, 1935.

[1]Reported in 262 N. W. 681, 263 N. W. 912, 266 N. W. 736.

564

*Harry E. Weinberg* and *John F. Ball,* for appellant (respondent below).

*McCoy & Hansen,* for respondent (relator below).

STONE, JUSTICE.

The city of Duluth appeals from a judgment awarding relator Evens a peremptory writ of *mandamus* for his reinstatement as an assistant fire warden in that city.

Relator was honorably discharged from the navy June 27, 1921, after well serving his country during the World War. January 1, 1930, successfully passing a civil service examination, he was appointed one of two assistant fire wardens of the city. The other was one William Ledingham, who became a member of the Duluth fire department September 1, 1911. In October, 1923, in the line of duty, Ledingham was seriously injured. He was temporarily blinded in both eyes and has entirely lost the sight of one. As a result, he was out of service for one year. September 17, 1924, he returned and was appointed assistant fire warden. If his earlier service be ignored, he was still senior to relator by more than five years.

As of October 1, 1933, and "on account of the necessity of curtailment of expenditures in the fire department budget," Evens was notified that his services would be dispensed with but that his name would be placed "on the reëmployment list," and that "as soon as conditions permit an increase of personnel, your reinstatement will be made." There is no evidence impugning either the assigned factual basis or the good faith of the discharge.

The place so vacated has not been refilled. As far as the record discloses, the position has not been abolished but rather and only suspended. There is claim that the work formerly done by Evens is now performed by captains of the fire department specially detailed for that purpose. But undisputed evidence shows no change of procedure in that respect. The chief of the fire department testified, in effect, that for a long time it had been the practice to require the captains, in turn and as part of their regular duty, to make inspection tours once a year of their districts of the same kind as those of the assistant fire wardens. The idea is that they should become personally familiar with conditions, as to fire risk and conflagration hazard, in their districts.

1. As premise for our decision is the proposition that *mandamus* does not lie unless it be "the clear and unquestioned duty" of the officer or officers in question "to do or not to do the act, without reference to any order or writ of any court." Lauritsen v. Seward, 99 Minn. 313, 326, 109 N. W. 404, 410; State ex rel. Schwartzkopf v. City of Brainerd, 121 Minn. 182, 141 N. W. 97, 46 L.R.A. (N.S.) 9; see also 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 5756.

2. The record falls far short of demonstrating that, as against Ledingham, relator had the right "clearly and unquestionably" to remain the one assistant fire warden of Duluth. That is because the former was senior to relator to the very substantial extent already noted.

The opposing argument falls under the rule of State ex rel. Boyd v. Matson, 155 Minn. 137, 193 N. W. 30. It was there held that the soldiers preference act, 1 Mason Minn. St. 1927, §§ 4368-4369, "does not authorize the removal of a prior appointee to make a place for a soldier, nor abrogate civil service rules giving precedence to appointees in the order of their appointment." The only difference, in respect to seniority, between that case and this is that there the elder right had been explicitly declared by civil service rules. But what a municipal council may do under formal written rules of its own making it may do also under an unwritten rule of conduct, where the latter is such a well-recognized principle of economic and industrial action as that which gives priority to a senior over

a junior employe, when one must leave the common employment, not because of incompetence or relative inefficiency, but solely on account of a reduction of force.

Had there been but one assistant fire warden and Ledingham the holder of the job, relator's service right would not have entitled him to insist that Ledingham be ousted to make way for him. "No one would seriously contend that the veterans preference act requires the discharge of nonveteran employes so that vacancies might be created to permit the initial appointment or employment of qualified veteran applicants." Swantush v. City of Detroit, 257 Mich. 389, 395, 241 N. W. 265, 267, 268. In legal content and result, the same problem was presented when the necessity arose for terminating the service of one of the two men. We have no occasion now to pass upon the situation that would have arisen had they possessed the same rights of seniority and relator had been let out on the ground of relative inefficiency. See Rounds v. City of Des Moines, 213 Iowa, 52, 238 N. W. 428.

Rights of seniority are not mentioned in the statute. But everywhere, in all well-regulated employments, they are long and well established and rest upon obviously sound policy, well calculated to promote industrial peace and justice. That policy the statute does not alter expressly. To cause it to do so by interpretation would carry it beyond its intended scope by a forced and artificial implication, a result which condemns the process by which it is reached.

Nobody more than a service man should be able to understand, and unable to disapprove, the seniority rule where justly applied. Doubtless relator himself, who was a boatswain's mate, would have felt much and justly aggrieved if, in the navy, one of his juniors in the same grade had been preferred for promotion; especially if (as was Ledingham's case) relator had been wounded in action and his service record otherwise more distinguished than that of the promoted junior.

3. The mandate, 1 Mason Minn. St. 1927, § 4369, that no employe with a service record "shall be removed from such position or employment except for incompetency or misconduct shown after a

hearing, upon due notice, upon stated charges," has no application where the office is removed from the occupant, instead of his being ousted from the office. As already stated, the office here was suspended. Relator was not removed to make way for another. The statute just quoted has no application to such a case. Lyon v. Civil Service Comm. 203 Iowa, 1203, 212 N. W. 579, 583; Swantush v. City of Detroit, 257 Mich. 389, 241 N. W. 265. There was no charge of incompetence or misconduct against relator. The simple fact was that the office itself was suspended for lack of funds.

In accordance with the views above expressed, the judgment must be reversed and the writ discharged.

So ordered.

UPON APPLICATION FOR REARGUMENT.

On December 13, 1935, the following opinion was filed:

STONE, JUSTICE.

Relator's petition for a rehearing is denied, but its authors are entitled to at least this much explanatory comment.

It is true that the decision probably does not follow the theory of the trial. For relator, the theory was that he was "summarily and arbitrarily removed * * * without cause, without notice, without charges being preferred against him and without a hearing and without an opportunity given to be heard." On the other hand, the city may have contended that the termination of his employment was justified by his relative inefficiency. Both ideas are wrong. As far as relative inefficiency goes, the evidence offered by the city on that point was excluded, and we know nothing about it; except for argument based on nothing in the record.

Relator wanted a peremptory writ of *mandamus,* and the premise of our decision was the established law that he could not have it unless it was the plain duty of respondents to do the act sought to be compelled. The record does show conclusively the facts concerning Ledingham's seniority over relator. That circumstance brings the case within the rule of C. M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124, under which we are compelled to disregard the theories of the trial and all of them because "the record

568

shows conclusively as a matter of law that on the merits" relator is not entitled to the peremptory writ.

We assume that by its civil service rules the city has attempted to make the rule of relative efficiency a test. To the extent that runs counter to the soldiers preference law as amended by L. 1931, c. 347, 3 Mason Minn. St. 1934 Supp. §§ 4369-1 to 4369-3, it is, of course, without effect. Even so, if, in a given case, the city authorities disregard their own rules in favor of the seniority rule where it has such compelling equitable application as it has to the facts of this case, *mandamus* will not lie to reverse the decision. That is all there is to this case.

But one word more should be said. We are charged with going wholly wrong on both law and facts. As to the facts, the claim is that, contrary to our interpretation of the record, "the office of assistant fire warden was neither suspended nor abolished, nor does the appellant city so claim." All we know about that is what the record discloses. Relator's services were dispensed with "on account of the necessity of curtailment of expenditures in the fire department budget." At the same time he was notified that his name was being placed on the reëmployment list to be reinstated as soon as conditions warranted an increase of personnel. The position has not been refilled, but remains vacant. Those are the facts disclosed by the record. Counsel can characterize them to suit themselves.

But there has been so much argumentative assertion, unsupported by anything in the record, that the office is "still being filled" and has been "neither suspended nor abolished" that our decision should not be taken as a bar to a motion for a new trial upon the ground that, because of evidence newly discovered or otherwise, the relator should have that issue tried. Of course, if relator's removal was simply to make way for someone else, he was wrongfully discharged. As already indicated, the record does not suggest that to be the case. We do not believe it is. But if relator can establish that contention, it can be done by a new trial confined to that issue, and our decision shall not be taken as a bar to an appropriate motion in the trial court.

AFTER REARGUMENT.

On April 18, 1936, the following opinion was filed:

PER CURIAM.

Upon reargument, it is ordered that in the event of a new trial in the district court the same shall cover all the issues except as limited by the order granting it.

