# STATE EX REL. ARTHUR G. NIEMI v. GERALD M. THOMAS AND OTHERS.[1]

April 11, 1947.

No. 34,377.

[1]Reported in 27 N. W. (2d) 155.

*H. A. Frankson* and *Nicholas Chanak,* for appellant.
*Carl B. Brink,* for respondents.

PETERSON, JUSTICE.

Relator seeks by mandamus to compel defendants as the village council of Hibbing to reinstate him in the position of chemist and inspector in the village health department. The village is governed by L. 1885, c. 145, under which it has the power to establish and maintain a health department.

The questions for decision are (1) whether the veterans preference law prevents a village council from in good faith abolishing an office or position it has the power to create; (2) whether a finding that the village council in good faith abolished the position is sustained where the evidence shows that the council expressly abolished the position and let a contract under which the contractor agreed to perform all the work incident thereto and other work also, and that the council retained no voice in the selection of the contractor's employe hired to assist him or in fixing the employe's duties and compensation; and (3) whether the contract in question is illegal upon the ground that it unlawfully delegates to the contractor the powers of the village council.

The facts out of which these questions emerge are that in January 1933 the village council appointed relator to the position in question; that under the veterans preference law (Minn. St. 1945, §§ 197.45, 197.46) he is entitled as a veteran to preference in tenure of the position and to enforce his right thereto, if any, by mandamus; that on March 5, 1946, the village council abolished the position; and that on the same day it let a contract to W. T. Mattson, the village sanitarian, under which in consideration of $433.33 per month to be paid by the village he undertook to render all services formerly rendered by employes of the health department, including relator and excluding the doctor and the nurse. Performance of all duties under the contract was to be under the supervision, control, and management of the village council. The contractor was to have the use at his own expense of the village laboratory. The village council was to have

the right, in its discretion, to deputize the contractor and his employes, if any, as health inspectors having, under the local health ordinance, the authority of police officers.

For a considerable time prior to the letting of the contract to Mr. Mattson, conditions in the health department were unsatisfactory to the village council, for reasons, among others, that there were rivalries among the employes; that a health department employe had been assigned to the general service of the village; that a garage employe had been assigned to the service of the health department; and that relator had been guilty of misconduct. On October 17, 1945, he was suspended for misconduct until December 31, 1945, with leave then to apply for reinstatement upon a showing of good conduct meanwhile. On January 7, 1946, he applied for reinstatement, but action on his application was deferred until March 6, the day after his position was subsequently abolished and the contract let to Mr. Mattson. The reasons advanced for abolishing the position and having the work of the department done under contract were that thereby the unsatisfactory conditions of affairs in the department mentioned would be rectified; that thereby economies would be effected; and that, because a similar contractual arrangement had been found to be satisfactory in a certain instance referred to in the testimony, it would be found also to be satisfactory in Hibbing.

While it was contemplated that it would be necessary for Mr. Mattson to hire an employe to assist him in doing the work under the contract, the village council had no voice and exercised none in the selection of the employe or in fixing his duties and compensation. Mr. Mattson hired Roy Lignel as his assistant at a salary of $200 per month. His duties included the performance not only of the work formerly done by relator, but also other work.

For some time there had been employed in the health department four persons, including relator and Mr. Mattson, at salaries aggregating $764. In January and February 1946, there were three employes, including Mr. Mattson and a substitute for relator, at salaries aggregating $578. The contract effected a monthly saving to

the village of $331 or $145, depending on whether the basis of computation was the figures before January 1946 or afterward.

The trial judge found that the village council in good faith abolished relator's position and ordered judgment for respondents. Relator moved in the alternative for amended findings or a new trial. The appeal brings up for review the part of the order denying relator's motion for a new trial.

■ The village council, having created in the exercise of its discretionary statutory powers the position to which it appointed relator, had the power to abolish the position. The power to create an office or position carries with it the power to abolish it. State ex rel. Verbon v. County of St. Louis, 216 Minn. 140, 12 N. W. (2d) 193; 37 Am. Jur., Municipal Corporations, § 227; 43 C. J., Municipal Corporations, § 977. Veterans preference statutes, under which veterans have preference rights to tenure of a position, do not prevent the bona fide abolition of the position. State ex rel. Boyd v. Matson, 155 Minn. 137, 193 N. W. 30; Annotations, 4 A. L. R. 207, and 37 A. L. R. 816. Hence, neither §§ 197.45 and 197.46, providing for veterans' preference in the tenure of public positions, nor relator's rights thereunder to preference in tenure of the position in question precluded the village council from in good faith abolishing the position.

■ Whether the village council in good faith abolished the position is a fact question, and if the evidence supports the finding of good faith the finding should be sustained. State ex rel. Boyd v. Matson, supra. We think that the evidence supports the finding. To begin with, the objects for dispensing with the employes in the health department have been accomplished. Rivalries among employes have been eliminated; the health department has been relieved of assigning one of its employes to another department and of carrying an employe of another department; and substantial economy has been effected by doing the work under contract. Of course, the village council could not, under the pretext of abolishing the position, continue it under some other name. There would have to be a real, not a sham or pretended, abolishment. Where the abolishment

of an office or position has been held to be sham and pretended, it generally has appeared that there was prompt re-creation of the office or position under a different name or assignment of the work thereof to another department, followed by appointment of a new appointee to perform the work formerly done by the incumbent of the office or position claimed to have been abolished. Cases of this sort are those like State ex rel. Tamminen v. City of Eveleth, 189 Minn. 229, 249 N. W. 184, 99 A. L. R. 289. See, Cranak v. Link, 219 Minn. 112, 17 N. W. (2d) 359. The instant case does not come within the rule of such cases. Here, the abolished position was not promptly re-created; the duties thereof were not assigned to some other department; there was no appointment of a village employe to do the work formerly done by relator. On the contrary, while the contractor's employe did the work relator formerly did, he did other work also. This he did as the contractor's employe and not as respondents' appointee, either directly or indirectly. See, State ex rel. Voris v. City of Seattle, 74 Wash. 199, 133 P. 11, 4 A. L. R. 198.

The fact that the council reserved the right to deputize Mr. Mattson and his employes, if any, as health officers is of no importance in this connection, for the reason that the deputizing was to be not for the purpose of establishing them in the position which was abolished, but for the purpose of better enabling them to do the work required under the contract.

■ Delegation of discretionary power by the governing body of a municipality to officers or employes of the municipality is not permissible under the rule that delegated power cannot be redelegated. The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244. The rule has no application to the delegation of ministerial functions. Where the performance of the duty involves no discretion or policy making and the governing body reserves all discretionary powers, the delegation is one of ministerial power. It is universally held that boards of health and municipal governing bodies may employ others to perform ministerial services and make contracts for the purpose. 39 C. J. S., Health, § 43; 44 C. J., Municipal Corporations, § 2143. Here, the village council reserved all discretion; all

440

policy making. It was to exercise oversight and supervision of performance of the work by Mr. Mattson and his employes, if any. Mr. Mattson was to have no discretion. He was to do ministerial work under the supervision and control of the council. The contract here involved is not therefore invalid as involving an illegal delegation of the powers of the village council.

Affirmed.

