Howard F. YOUNG, Respondent,

v.

CITY OF DULUTH, Petitioner, Appellant.

No. C9-84-2175.

Supreme Court of Minnesota.

May 16, 1986.

---

William P. Dinan, City Atty., Bryan F. Brown, Deputy City Atty., Duluth, for appellant.

Joseph J. Roby, Jr., Duluth, for respondent.

SCOTT, Justice.

The City of Duluth seeks further review of a Minnesota Court of Appeals decision holding that Howard Young, a veteran dismissed from his employment with the city without written notice of his rights under the Veterans Preference Act, Minn.Stat. §§ 197.46–.481 (1984), was entitled to a writ of mandamus commanding the city to reinstate him to his former position of employment and to award him back pay and benefits from the date of his termination. The trial court had denied issuance of the writ, ruling that the city's failure to notify Young of his right to a hearing under the Act was immaterial because Young, in fact, had knowledge of his rights and had not exercised them within the 60-day statutory period. We affirm the decision of the Court of Appeals, as modified.

In 1968 Howard Young was hired by the City of Duluth to work as a program assistant in the city's Concentrated Employment Program. Three years later he became director of the city's Operation Mainstream, a program providing job training to the unemployed. By 1978, Young was involved in the city's On-the-Job Training (OJT) program, soliciting private employers for their support in placing unemployed individuals in their businesses. Young monitored all such placements and drafted employment agreements with the businesses participating in the program.

The OJT program was one component of the federal Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801–992 (1976). The funding for many CETA programs was significantly reduced by Congress in 1981 and, in anticipation of cuts in certain programs, city personnel officials met throughout the spring and summer of 1981 to discuss the possibility of terminating positions in such programs. The salaries for 60 positions, including Young's position in the city's OJT program, were paid with CETA funds. Although the budgets of most of the city's CETA programs were reduced for the fiscal year beginning October 1, 1981, the budget for the city's OJT program, the program Young had helped coordinate since 1978, was increased from $80,874 (the amount actually spent in the 1980–81 fiscal year) to $234,702 (the amount projected to be spent

in the 1981–82 fiscal year). Young's salary was typically included in these specific CETA funds allotted to the OJT program.

Near the end of the 1980–81 fiscal year, on September 16, 1981, Young received a letter from George Lehner, acting director of personnel for the city. The letter read, in part:

> As you know, the City of Duluth is experiencing budget reductions due to reduced revenues from federal, state and local resources. This has led to the elimination of some positions and it is with extreme regret that I must advise that your job is being eliminated and you will be laid off effective ten working days from the date of receipt of this letter in accordance with your union or association agreement.

The city placed Young on a re-employment list, but he has not been rehired.

Shortly after his dismissal from public employment, Young requested a grievance hearing under the collective bargaining agreement between his union and the city. After an initial hearing on the arbitrability of some of the grievances raised, a hearing was held and on August 9, 1983, the arbitrator concluded: "The decision to reduce the size of CETA and restructure was one validly made pursuant to powers granted to the City by Article V, and Article XXXVII does not grant the Grievants a right to review the decision, as such, in this forum." The arbitrator denied Young's request for reinstatement and back pay.

Thereafter, Young, who is a veteran covered by the state Veterans Preference Act, requested by letter dated September 23, 1983, a veteran's hearing under the Act. The city refused, and on November 15, 1983, Young filed a petition for writ of mandamus in district court. The petition alleged that the city, in violation of the Veterans Preference Act, failed to give Young written notice that he was being discharged for incompetency or misconduct and that he had a right to request a hearing under the Act within 60 days of such notice. The Sixth Judicial District Court treated Young's summons and petition as an alternative writ of mandamus, allowing the city to show cause, through discovery and trial, why a peremptory writ of mandamus should not issue.

At trial, the city admitted that Young was not released from his job for reasons attributable to his job performance. Young testified that he had not been warned that he performed his job incompetently or that he engaged in misconduct. He also stated that he had never received a written notice from the city regarding his right to request a hearing under the Veterans Preference Act.

Young further testified that he never represented to anyone that he was waiving his rights under the Act. He stated that upon receiving the termination letter he talked first to his union representative. The union provided Young with an attorney to represent him at a grievance hearing and Young testified that this attorney told him petitioning for a veteran's hearing would have to wait until the arbitration hearing had been held and the arbitrator had ruled on the grievance. Young also talked to a veterans' affairs representative stationed in Duluth. Young testified that at this time he had already filed a grievance under the collective bargaining agreement but that he had contacted the veterans' representative in order to protect any rights he might have under the Veterans Preference Act. Young stated that the veterans' representative told him that even though he was commencing a hearing under the collective bargaining agreement his rights under the Veterans Preference Act would be retained.

At trial, several witnesses testified that the duties performed by Young in the OJT program were transferred to other city employees upon the abolition of Young's position. Patti Maguire, a nonveteran employee of the city, testified that on October 1, 1981, she began working in the OJT program, monitoring employees placed in businesses and contacting private employers for their participation in the program. She stated, however, that these duties did not constitute a full-time position. Maguire

continued performing such duties until April 1983, when Cindy Rohde-Johnson, a nonveteran who had been employed by the city since 1979, assumed the OJT tasks. She, too, testified that in her position she performed duties other than those solely associated with the OJT program. Rohde-Johnson testified that CETA funding for the OJT program ended in 1982 and that in 1983 the federal Job Training Partnership Act (JTPA) took effect. On-the-job training was the central focus of the JTPA and federal funding for the city's OJT program was authorized by this new law. The initial funding under JTPA, however, was significantly lower than under CETA and Rohde-Johnson was transferred to another department of the city in October, 1983. Soon thereafter, the Minnesota Emergency Employment Development Act (MEED), Minn.Stat. §§ 268.671–.686 (1984), became effective and eventually city personnel from other departments were transferred to the OJT program to begin contacting private employers about possible job openings for persons qualifying under MEED. The city hired two additional people to work in the MEED job training program.

Testimony was also taken at trial regarding the streamlining of operations in a number of the city's CETA programs in 1981. Thomas Muhvic, a city employee involved in that process, testified that because Young had been employed with the city longer than most employees involved in CETA programs, his salary was higher than that of most CETA employees. Muhvic also stated that Young, at the time, was nearing retirement and the committee, discussing ways to streamline operations in order to reduce overhead, considered the payment of possible pension benefits to Young. By eliminating the older employees in the program, Muhvic noted, the city could keep on more of the younger employees (who were earning significantly less money), to perform the same duties. Muhvic testified that the committee decided to terminate individuals in light of this fact.

Joseph Wilkins, a city employee who was also involved in the streamlining process, testified. He stated that the committee felt Young's duties could be covered by other city employees. He also noted that the committee had no intention of eliminating the OJT duties Young was performing. However, Wilkins did testify that the goal of the committee was to have fewer employees performing the administrative functions of the OJT program in order to save CETA funds.

In its findings of fact, the district court stated:

The "Lay Off Notice" [received by Petitioner Young] in reality, was a termination for cause not attributable to the Petitioner and his placement on a re-employment list by the Respondent was not significant or meaningful because the position for which he was deemed to be re-employable was in the Federal CETA Program, which was ended by Congress in 1982. The "Lay Off Notice" did not fully comply with the Veterans Preference Statutes in that it did not alert the Petitioner in writing to his right to have a Veterans Preference Hearing. The Petitioner, however, was at all times aware of his Veterans Preference Rights, considered filing a demand for a Veterans Preference Hearing within sixty days, and deliberately declined to do so for personal or strategic reasons. The failure of the Respondent to set forth in writing that the Petitioner was entitled to a Veterans Preference Hearing was and is immaterial because of the equal knowledge of the Petitioner concerning his own rights.

The court denied Young's petition for a writ of mandamus and Young appealed.

The Minnesota Court of Appeals reversed and remanded, holding that the failure of the city to notify Young of his right to a veteran's hearing was not immaterial. It stated:

The purpose of the notice requirement is to make certain that the veteran is made aware of his right to a hearing. It seems the trial court concluded that, because the purpose of the notice requirement was satisfied (Young knew of his

right to a veteran's hearing), the city's noncompliance was immaterial.

This notice requirement cannot be dismissed quite so simply. Although it is quite clear that in this case the purpose of alerting the petitioner to his rights was fulfilled, we are concerned about the case which is not as clear. Should a veteran be required to meet the difficult burden of rebutting evidence tending to establish knowledge of his rights? We think not. The notice requirement must be strictly enforced.

*Young v. City of Duluth,* 372 N.W.2d 57, 59 (Minn.Ct.App.1985). The court of appeals concluded that because the city never gave notice to Young, the 60-day period in which a veteran can petition for a hearing never began to run. Thus, Young's demand for a hearing in 1983 was not untimely. The appellate court held, however, that the need for a hearing was obviated because it was undisputed that Young was not terminated because of incompetency or misconduct, the only two reasons allowed under the Veterans Preference Act for terminating a veteran employed by a public entity. The court of appeals thus remanded to the district court for the issuance of a writ of mandamus commanding the City of Duluth to reinstate Young and to award him back pay and benefits from the date of his removal.

We granted the city's petition for further review to discuss whether the district court had jurisdiction to consider Young's petition for a writ of mandamus and whether the writ should issue against the city.

Since 1907, the law of Minnesota has given honorably discharged veterans preference in appointment to positions of public employment. *See* Act of April 19, 1907, ch. 263, 1907 Minn.Laws 355. The law has also afforded veterans employed by state or local government protection from unwarranted removal from their positions. The current Veterans Preference Act provides, in part:

Any person whose rights may be in any way prejudiced contrary to any of the provisions of this section, shall be entitled to a writ of mandamus to remedy the wrong. No person holding a position by appointment or employment in the several counties, cities, towns, school districts and all other political subdivisions in the state, who is a veteran separated from the military service under honorable conditions, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Any veteran who has been notified of the intent to discharge him from an appointed position or employment pursuant to this section shall be notified in writing of such intent to discharge and of his right to request a hearing within 60 days of receipt of the notice of intent to discharge. The failure of a veteran to request a hearing within the provided 60-day period shall constitute a waiver of his right to a hearing. Such failure shall also waive all other available legal remedies for reinstatement.

Request for a hearing concerning such a discharge shall be made in writing and submitted by mail or personal service to the employment office of the concerned employer or other appropriate office or person.

Minn.Stat. § 197.46 (1984).

In 1973, the legislature enacted an enforcement mechanism separate from the right to a writ of mandamus authorized in section 197.46 of the Act. *See* Act of May 23, 1973, ch. 570, 1973 Minn.Laws 1289. Section 197.481, subdivision 1, provides, in part:

A veteran who has been denied rights by the state or any political subdivision, municipality, or other public agency of the state under sections 43A.11, 197.46, 197.-48 or 197.455 may petition the commissioner of veterans affairs for an order directing the agency to grant the veteran such relief the commissioner finds justified by said statutes.

The City of Duluth contends that by enacting the administrative enforcement procedure in 1973, the legislature, in effect,

removed such veteran claims from the jurisdiction of the district court—jurisdiction that was afforded by the section 197.46 mandamus procedure. Because Young petitioned the district court for a writ of mandamus and did not petition the commissioner of veterans affairs for an order, the city maintains that the district court had no jurisdiction to consider Young's request.

■ It is evident from the language of the Act that the legislature intended to allow veterans to enforce their rights by either petitioning for a writ of mandamus under section 197.46 or by requesting an order from the commissioner under section 197.481. The newer administrative procedure, section 197.481, is permissive: "A veteran * * * *may* petition the commissioner of veterans affairs for an order * * *." (Emphasis added.) The legislature could not have intended for this procedure to be exclusive. Moreover, the language granting a right of mandamus was not repealed when the administrative enforcement section was enacted. Under the mandamus provision, jurisdiction clearly lies with the district court; thus, Young's petition for a writ could not have been dismissed for want of jurisdiction.

The more difficult question to resolve is whether the writ of mandamus should issue against the City of Duluth. The city contends that Young should have petitioned for a writ within 60 days of receipt of the notice of termination of his position. Young argues that his petition is not untimely because the city, upon terminating his employment, never notified him of his rights under the Veterans Preference Act. The city, however, maintains that it was not required to give Young notice of his rights under the Veterans Preference Act because it did not terminate him for cause but instead laid him off as part of an effort to streamline CETA programs. For this contention the city relies on our decision in *State ex rel. Boyd v. Matson,* 155 Minn. 137, 193 N.W. 30 (1923).

In *Boyd,* we recognized that the Veterans Preference Act expressly provides that veterans covered under the Act can be re-

moved from positions of public employment only for "incompetency" or "misconduct." However, we held that the Act is not intended to prevent public employers from abolishing positions in good faith, stating:

> The purpose of this section [the Veterans Preference Act] is to take away from the appointing officials the arbitrary power, ordinarily possessed, to remove such appointees at pleasure; and to restrict their power of removal to the making of removals for cause. But it is well settled that statutes forbidding municipal officials from removing appointees except for cause are not intended to take away the power given such officials over the administrative and business affairs of the municipality, and do not prevent them from terminating the employment of an appointee by abolishing the office or position which he held, if the action abolishing it be taken in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position. The municipal authorities may abolish the position held by an honorably discharged soldier and thereby terminate his employment, notwithstanding the so-called veteran's preference act.

*Id.* at 141–42, 193 N.W. at 32 (citations omitted).

Although, in light of *Boyd,* public employers may abolish positions "notwithstanding" the Veterans Preference Act, we have recognized in cases following *Boyd* that the Act, and all the rights afforded thereunder, will apply if the abolition of the office was not in good faith. We stated in *State ex rel. Tamminen v. City of Eveleth,* 189 Minn. 229, 234, 249 N.W. 184, 186 (1933), that "[a]s said by the court in its memorandum: 'The law does not countenance the ousting of a soldier from an office by abolishing the name of the office just to get rid of a soldier.'" We noted in *State ex rel. Niemi v. Thomas,* 223 Minn. 435, 438–39, 27 N.W.2d 155, 158 (1947):

> Of course, the village council could not, under the pretext of abolishing the position, continue it under some other name. There would have to be a real, not a

sham or pretended, abolishment. Where the abolishment of an office or position has been held to be a sham and pretended, it generally has appeared that there was prompt re-creation of the office or position under a different name or assignment of the work thereof to another department, followed by appointment of a new appointee to perform the work formerly done by the incumbent of the office or position claimed to have been abolished.

In *State ex rel. Caffrey v. Metropolitan Airports Commission,* 310 Minn. 480, 488, 246 N.W.2d 637, 642 (1976), we stated: "Absent a good faith abolition of petitioner's office, MAC is not excused from providing him his VPL [Veterans Preference Law] rights."

In light of this case law, public employers have only three grounds on which to base a termination of a veteran. The Act allows a termination for "incompetency" or "misconduct" and *Boyd* permits a public employer to, in good faith, abolish a position held by a veteran. The Act specifically requires a public employer removing a veteran from employment to provide written notice of his or her veterans preference rights. This requirement is applicable to cases in which a public employer claims it is abolishing a position of employment held by a veteran, for we have consistently held that a veteran is entitled to a writ of mandamus ordering the public employer to reinstate the veteran to his or her former position with back pay when it is established, after a hearing, that the public employer, under the pretext of abolishing a veteran's position, actually continued it under some other name or reassigned the

veteran's duties to some other employee. *See Caffrey,* 310 Minn. at 488, 246 N.W.2d at 641–42; *Niemi,* 223 Minn. at 438–39, 27 N.W.2d at 156–58; *State ex rel. Evens v. City of Duluth,* 195 Minn. 563, 566–67, 262 N.W. 681, 682 (1935); *Tamminen,* 189 Minn. at 234, 249 N.W.2d at 185–86. This right to a writ of mandamus would, in many cases, be meaningless without a notice requirement.[1]

◼   Here, the district court recognized that the city was required to notify Young, in writing, of his veterans preference rights. It ruled, however, that because Young was aware of his rights under the Veterans Preference Act, his petition for a writ of mandamus was untimely. This ruling in effect places a burden on veterans to prove not only that their public employer failed to give them notice upon the termination of their employment or upon the abolition of their position, but also that they were, in fact, not aware of their preference rights under the Act. Such a burden of proof is not present in the Veterans Preference Act, and we decline to read it into the statute. Under the Act, if no notice is given to the veteran, no time limitation for the commencement of a hearing or writ of mandamus begins to run. It is immaterial whether a veteran is aware of his or her preference rights under the Act.

Because Young's petition for a writ of mandamus was not untimely, we must remand to the district court for a determination on whether the city did, in good faith, abolish Young's position. No finding of fact on this issue was made.[2] If the city merely reassigned Young's duties to non-veteran employees less senior than he,[3] his

---

1.  The notice should state that the veteran has 60 days in which to petition in district court for a writ of mandamus compelling the public employer to reinstate the veteran to his or her former position with back pay. A writ will issue against the public employer if the veteran can establish, after a hearing before the district court, that the public employer did not, in good faith, abolish the position.

2.  In its findings of fact, the district court stated: "The 'Lay Off Notice' in reality, was a termination for cause not attributable to the Petition-

er * * *." It cannot be determined whether this finding concerned the good faith nature of the city's abolition of Young's position.

3.  As we stated in *Boyd,* "[t]he [veterans preference] act does not authorize, nor purport to authorize, the removal of a prior appointee to make a place for a soldier; and cannot reasonably be construed as abrogating the civil service rules governing tenure of office." 155 Minn. at 141, 193 N.W. at 31–32.

position was not abolished in good faith, and he is entitled to reinstatement with back pay. The Veterans Preference Act is applicable to cases in which public employers reassign duties in times of revenue shortfalls and budget cuts. No exception in the Act exists for such situations. Thus, veterans have a preference over nonveteran employees less senior than they to continue to perform duties for which they are qualified if the public employer continues to need such duties performed. We therefore affirm the decision of the court of appeals, as modified, and remand the issue to the district court with instructions.

Affirmed as modified.

SIMONETT, KELLEY and COYNE, JJ., concur specially.

SIMONETT, Justice (concurring specially).

I agree with the result reached by the majority in this case, but I arrive at that result by a little different route.

First of all, a veteran is given preference to certain government positions over nonveterans. Minn.Stat. § 197.455 (1984), incorporating by reference Minn.Stat. § 43A.11 (1984). Secondly, a veteran, once appointed, may not be discharged from his or her government position "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." Minn.Stat. § 197.46 (1984). Because these are the only stated grounds for removal, this court has construed the statute to mean that an incumbent veteran is entitled to hold his job, absent a showing of incompetency or misconduct, so long as the job exists. A public employer is not required to continue a job in existence simply to benefit a veteran; only that if the job is continued, the veteran is entitled to keep it. *See, e.g., State ex rel. Boyd v. Matson*, 155 Minn. 137, 141–42, 193 N.W. 30, 32 (1923). On the other hand, if the job is abolished for no good reason but simply to get rid of the veteran, the law will require the veteran's reinstatement. *Id.* Furthermore, if a public employer is dissatisfied with a veteran's job

performance, the employer is well advised to hold a discharge hearing; if the employer instead abolishes the job, it runs the risk that a court may find the job termination was a sham to avoid a discharge hearing. *See State ex rel. Caffrey v. Metropolitan Airports Commission*, 310 Minn. 480, 246 N.W.2d 637 (1976).

We have here two issues. First, does the job formerly held by plaintiff Howard Young continue to exist or should it continue to exist? This is an issue of fact yet to be resolved. Secondly, has Young pursued the proper course of legal action in presenting this kind of claim?

The statute provides a hearing before a civil service commission or like panel for cases of removal for incompetency or misconduct. There is no claim, however, that Young lost his job for incompetency or misconduct. Therefore, Young had no right to a panel hearing and the city was under no obligation to give him notice of any hearing. *See State ex rel. Evens v. City of Duluth*, 195 Minn. 563, 566–67, 262 N.W. 681, 682 (1935) (the hearing requirement is inapplicable "where the office is removed from the occupant, instead of his being ousted from the office").

We have here an entirely different problem. The city claims it was required to restructure its job assistance program because of changes in government funding. Young's old position of Operation Mainstream Director no longer exists. Under the new program, says the city, there is no position comparable to Operation Mainstream Director, although there is a new part-time position with some of the duties the former Operation Mainstream Director performed. Plaintiff Young is not, as I understand him, questioning the city's right to restructure its job assistance program, only the manner in which it was done. Presumably, Young is not interested in the new part-time position. Rather, he appears to claim the city was required to create a new position like his old one, to which he, as a veteran, would be entitled to preference. If this is his claim, I have

some reservations about it. On the other hand, there may be some evidence the city parceled out the duties of Young's old position into several new positions simply to avoid paying Young's higher salary without any overall substantial savings or other legitimate reason.

The rule is that a veteran's employment can be terminated by abolishment of his position if done "in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position." *Boyd*, 155 Minn. at 141, 193 N.W. at 32. *Boyd*, however, was not a bad faith case. There, concededly, the city in good faith reduced the number of telegraph operators from 16 to 11, and the court simply held that one of the 11 remaining positions must be the veteran's position because the veteran had preference over nonveterans appointed at the same time or later to the other like positions. Since *Boyd*, a number of cases have dealt with the bad faith issue. Abolishing a veteran's job as deputy clerk and hiring a bookkeeper to perform the same duties has been held to be a sham transaction entitling the veteran to reinstatement. *State ex rel. Tamminen v. City of Eveleth*, 189 Minn. 229, 249 N.W. 184 (1933). Abolishing the position of public affairs director without effecting significant financial savings and without any substantial change in the operation of the public affairs program and where the veteran's performance was thought unsatisfactory has been held to be a subterfuge to get rid of a veteran, entitling the veteran to reinstatement. *Caffrey, supra.* On the other hand, we have held that the abolishment of a village health department position and reassignment of the duties to an independent contractor with resultant substantial economies and elimination of rivalries in the department was a good faith abolishment of the veteran's position. *State ex rel. Niemi v. Thomas*, 223 Minn. 435, 27 N.W.2d 155 (1947). Interesting also is *State ex rel. Evens v. City of Duluth, supra.* There the city suspended Evens from his job as assistant fire warden because of lack of funds, but kept on a nonveteran with more seniority in the other remaining assistant fire warden position. This court held the supervisor did not violate Evens' rights as a veteran, but, because the veteran insisted he could show that he was removed to make way for someone else, the court remanded for a new trial. In our case here, Young should at least be given a chance to prove his case, if he has one. The trial court did not make findings on these issues, and neither, I might add, did the arbitration proceeding deal with these issues.

As the majority holds, Young's remedy is mandamus. Section 197.46 expressly states a veteran whose rights under the section have been prejudiced is entitled to the writ. The issues involved here, which include preference, bad faith, and managerial prerogatives and policies, would seem to be best handled by the district court, not by a civil service commission or like panel. A lay panel is better equipped to deal with pure fact issues of incompetency and misconduct, which may be why the legislature limited the notice and panel hearing requirements to wrongful discharge cases.

Unfortunately, the Veterans Preference Act sets no time limit for bringing a mandamus action. The majority opinion would require that the action be brought within 60 days after the public employer gives written notice advising the veteran of his or her right to contest the job termination. I agree this is a desirable solution but it seems to me this is a solution for the legislature to impose, not this court. Until the legislature acts, I would hold a veteran's mandamus action can only be time-barred for laches. The difficulty is the veteran's delay in bringing the mandamus action increases the public employer's liability exposure. We alluded to this problem in *State ex rel. Sprague v. Heise*, 243 Minn. 367, 374, 67 N.W.2d 907, 912 (1954), where we stressed the importance of the veteran's asserting his rights promptly. The prudent employer would be well advised to give the veteran the written notice mentioned in the majority opinion, as this would bear on laches. In this case, the city has not alleged laches, but even if it had,

the extenuating circumstances here would, in my opinion, make laches inapplicable. I agree, therefore, this case should be remanded for trial of the fact issues.

KELLEY, Justice (concurring specially).

I join in the special concurrence of Justice Simonett.

COYNE, Justice (concurring specially).

I join in the special concurrence of Justice Simonett.