Thomas P. TAYLOR, Relator,

v.

CITY OF NEW LONDON, Respondent.

No. C2-94-2617.

Court of Appeals of Minnesota.

Sept. 12, 1995.

Review Denied Oct. 27, 1995.

Robert J. Zohlmann, New London, for relator.

Carla J. Heyl, Shoreview, for respondent.

Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and AMUNDSON, J.

## OPINION

HUSPENI, Judge.

Relator petitioned for certiorari review of a decision of the Commissioner of Veterans Affairs (the Commissioner) denying relator reinstatement in his position, or in the alternative full compensation until retirement, on the grounds that his position was eliminated in good faith, and denying backpay on the grounds that a veteran's remedy for a public employer's failure to provide notice of the right to petition for a hearing pursuant to the Veteran's Preference Act, Minn.Stat. § 197.46 (1992) (the Act) is a tolling of the period to petition. Because we find that the Commissioner's finding of good faith is supported by the evidence and see no error of law in his determination, we affirm.

## FACTS

The City of New London (the City) began negotiating in 1993 with Kandiyohi County (the County) to provide police services: The City spent $41,424 for police expenses in 1993, and the County agreed to provide services for a maximum of $30,160 in 1994. In October 1993, the City and the County entered into a contract almost identical to the contract that had been in effect since 1978 between the County and the City of Spicer, a nearby city of comparable size to New London.

Relator Thomas Taylor, a veteran honorably discharged in 1970, had been employed by the City as its chief of police and sole police officer since 1982. The City advised relator in October 1993 that the police department was being dissolved, but did not notify him of his rights under the Act.

Relator then petitioned the Commissioner for "reinstatement with full benefits or full compensation until retirement age," but not for backpay. The transcript of his hearing before the administrative law judge (ALJ) shows discussion and testimony on only one issue: whether the disbanding of the police department was in good faith. The ALJ concluded that the City

abolished its police department for a legitimate purpose and the action was not taken as a subterfuge to oust [relator] from his position. [The City] has not denied [relator] any rights provided to him under the [Act].

The first reference to the backpay issue appears in relator's bill of exceptions to the ALJ's findings:

> [The ALJ] failed to make a finding that [relator] is entitled to continued pay, from the date of termination, through and until the date of his veteran's preference hearing. It is [relator's] position that regardless of the final decision [on reinstatement] he is entitled to back-pay, due to the fact that [City] failed to advise him of his right to hearing.

The Commissioner followed the ALJ's recommendation that relator's petition be dismissed and adopted the findings and conclusions relative to the good-faith disbanding of the police department. The Commissioner also denied relator backpay.

## ISSUES

1. Did the Commissioner err in finding that the City disbanded its police department in good faith?

2. Did the Commissioner err in denying relator backpay?

## ANALYSIS

### 1. Disbanding of the police department

■ This court applies the substantial evidence test when reviewing quasi-judicial actions. *In re Signal Delivery Serv.*, 288 N.W.2d 707, 710 (Minn.1980).[1] Substantial evidence is defined as:

> 1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2. More than a scintilla of evidence; 3. More than some evidence; 4. More than any evidence; and 5. Evidence considered in its entirety.

*Cable Communications Bd. v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984). Whether the City in good faith disbanded the police department and abolished relator's position in this case is a fact question. If the evidence supports the Commissioner's finding of good faith, the finding should be sustained. *Niemi v. Thomas*, 223 Minn. 435, 438, 27 N.W.2d 155, 157 (1947). This court cannot substitute its judgment for that of an administrative body when a finding of fact is properly supported by the evidence. *Vicker v. Starkey*, 265 Minn. 464, 470, 122 N.W.2d 169, 173 (1963).

■ Case law in Minnesota has long recognized that the Act protects honorably discharged veterans from the ravages of the political spoils system. *Johnson v. Village of Cohasset*, 263 Minn. 425, 435, 116 N.W.2d 692, 699 (1962). Courts have also recognized, however, that the Act does not prevent employers from abolishing positions in good faith. *State ex rel. Boyd v. Matson*, 155 Minn. 137, 141, 193 N.W. 30, 32 (1923). The City contends that the abolition of its police department was done in good faith; relator contends that it was not.

■ The Commissioner adopted the ALJ's findings that the contract between the City and the County provided for police services to be provided during 1994 at a cost of $26 per hour, not to exceed $30,160; that at the time of the contract the City sold its police car, radios, and other equipment to the County; that the expenses for the City's police department totalled $58,141.58, of which $16,716.74 were continuing costs incurred regardless of the contract with the County, so the actual expense of the police department was $41,424.84; and that "the difference between the City's costs under the contract with the County ($30,160) and under its 1993 budget ($41,424.84) is $11,264.84."

Based on these findings, the ALJ and the Commissioner concluded that the City was authorized to contract with the County to provide police services, that the contract would result in substantial savings for the City, and that the City had abolished its

---

1. Quasi-judicial proceedings have been defined as those where a commissioner hears the views of opposing sides presented through written and oral testimony, examines the record, and makes findings of fact. *In re Signal Delivery Serv.*, 288 N.W.2d at 710.

police department for a legitimate purpose and not as a subterfuge to oust relator from his position.

Relator argues that the City's claim that it abolished the police department for financial reasons is not supported by "direct evidence," i.e evidence "indicat[ing] the actual motives of the city council members when they decided to abolish the Police Department;" however, he offers no authority for either the definition or the requirement of "direct evidence." Relator claims that the City's "actual motive" for abolishing its police department was to remove him from his position, and that evidence of the City's "actual motive" should have been presented in the form of transcripts and minutes of council meetings. Relator further asserts that because the City failed to present such evidence, it did not meet its burden of demonstrating a good faith reason for abolishing the police department.

We cannot agree. The ALJ heard testimony from the county coordinator for Kandiyohi County, who testified that he provided the City of New London with a contract for police services identical to the contract the County then had in effect with the City of Spicer and that the contract with Spicer had been in effect since 1978. Cross-examination of the county coordinator failed to establish any improper motive for abolishing the police department; relator's name was not even mentioned.

The New London clerk-treasurer testified that total police department expenditures for 1993 were $58,141.58; that the actual cost for police services was $42,300,[2] for forty hours a week; and that the amount paid for police services to the County in 1994 was not to exceed $30,161, for twenty hours a week in winter and thirty in summer. Her evidence was supported by budgets and other financial documents. She also testified that she recalled the city council had voted unanimously in favor of the contract; that neither the mayor nor any council member had ever told her of their alleged dislike of relator, and that she was not aware of any dislike, although she was aware of a personality conflict in the context of relator's relationship as an employee with a particular council member as his employer.

The testimony of the county coordinator and the city clerk-treasurer meets all five Cable Communications Board definitions of "substantial evidence" and provides ample support for the Commissioner's decision. Moreover, their testimony was not refuted by any testimony that the city council did not make a good-faith decision to abolish the police department for economic reasons.

The only testimony regarding a council member's alleged feelings about relator was hearsay evidence provided by relator himself. He testified that a third party had told relator that a council member said, "I've got a vendetta to settle with [relator]." Relator attributed this alleged statement to the fact that he had given the council member "a warning for a stop sign" several years earlier. Relator also testified that the mayor was "hostile," but offered nothing to support this statement.

Relator's argument ignores this court's function on review: to determine whether the Commissioner's findings are supported by substantial evidence, not to speculate as to what findings might have been drawn from evidence that was not submitted. The evidence before the Commissioner supports the finding that the City had a sound economic basis for disbanding its police department and contracting with the County for police services.[3]

## 2. Backpay

In addition to adopting the findings, conclusions, and recommendations of the ALJ,

---

2. When asked if $41,584.84 sounded "about right," the clerk-treasurer said "I came up with $42,300." While these figures do not exactly reflect the Commissioner's finding of $41,424.84, the discrepancy is not challenged.

3. The Commissioner also adopted the ALJ's finding that "the parties stipulated that the City of New London does not allege any incompetence or misconduct on the part of Mr. Taylor." Despite this stipulation, relator attempts to argue on appeal issues related to his discipline. We do not address these issues: They were not before the ALJ or the Commissioner, and are not properly before this court. Thiele v. Stich, 425 N.W.2d 580, 582 (Minn.1988).

the Commissioner addressed and denied relief to relator on the issue of whether relator was entitled to backpay because of the City's failure to notify him of his right to a hearing under the Act.[4] We conclude that denial of backpay was proper.

■ In *Young v. City of Duluth,* 386 N.W.2d 732, 738 (Minn.1986), the supreme court modified this court's determination that a veteran notified of the abolishing of his position, but not of his right to petition for a hearing within 60 days, was entitled to reinstatement and backpay. The supreme court ruled instead that failure to notify of the right to petition was to be remedied by the veteran's entitlement to a hearing, despite the fact that more than 60 days had elapsed. The supreme court noted that backpay, like reinstatement, would be appropriate only if the position were found not to have been abolished in good faith. *Id.* at 738–39.

We decline to expand the relief for lack of notice beyond that specifically granted in *Young.* Because in this case relator was, in fact, accorded a full hearing on whether his position was terminated in good faith, we conclude that he was afforded all the relief available to him under *Young* and, therefore, the Commissioner did not err in denying backpay.

In denying backpay, the Commissioner declined to apply retroactively the holding of *Martensen v. Minneapolis Bd. of Educ.,* OAH File No. 55–3100–8473–2, April 13, 1994.[5] *Martensen* granted backpay plus interest to a veteran whose position had been abolished and who had not been notified of his rights, reasoning that:

> Until both of those requirements [that the abolition be in good faith and that the veteran receive notice of his rights] are fulfilled, the veteran has not been formally discharged [and] * * * is therefore entitled to pay continuation.

4. Notwithstanding the lack of notice, relator was granted a hearing on whether his position was terminated in good faith.

5. The Commissioner reasoned that because unfairness to employers who "relied on a different

*Id.* at 13. *Martensen* apparently conflicts with the *Young* holding that backpay is appropriate only after a determination that the position was not abolished in good faith. Because we must be guided by supreme court case law, we do not address either the correctness of the holding in *Martensen* or the Commissioner's decision not to apply it here.

We note, however, that another of the Commissioner's decisions is in accord with *Young.* In *Stordahl v. City of Moorhead,* OAH File No. 6–3100–5440–2, Aug. 10, 1991, p. 6, the Commissioner denied backpay to a veteran who had not received notice of his rights, and held that the lack of notification meant "the Commissioner does have authority to order a hearing in the event that Petitioner is entitled to relief." *Stordahl* reflects the rationale of *Young* that the effect of a public employer's failure to give notice is to estop the employer from later claiming that the veteran failed to petition timely for a hearing. *See also In re Strohkirch,* No. C1–94–1930, 1995 WL 91559 (Minn.App. Mar.7, 1995) (following *Young;* holding that a good-faith economic purpose for eliminating a veteran's position would be defeated by a requirement that the veteran receive backpay).

## DECISION

The Commissioner's determination that relator's position was terminated in good faith is supported by the evidence and the Commissioner properly denied backpay. We affirm the conclusions that relator is not entitled to reinstatement or to full compensation until retirement, and that he is not entitled to backpay as a remedy for the City's failure to notify him of his right to a hearing.

**Affirmed.**

interpretation of their responsibilities to provide notice * * * could result in substantial unanticipated damages," *Martensen* will apply "only to layoffs which occur after it."