**In the Matter of Allen R. OCHOCKI, Respondent,**

v.

**DAKOTA COUNTY SHERIFF'S DEPARTMENT, Relator.**

No. C4-89-2104.

Court of Appeals of Minnesota.

May 1, 1990.

Review Granted June 26, 1990.

Hubert H. Humphrey, III, Atty. Gen., Merwin Peterson, Asst. Atty. Gen., St. Paul, Charles F. Gegen, Lakeville, William J. Gregg, Com'r of Veterans Affairs, St. Paul, for respondent.

James C. Backstrom, Dakota County Atty., Jay R. Stassen, Asst. County Atty., Hastings, for relator.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and MULALLY,* JJ.

## OPINION

KALITOWSKI, Judge.

Dakota County appeals from a Commissioner of Veterans Affairs' order requiring the county to reinstate Allen Ochocki to the position of Correctional Team Leader after he was removed from the position because the county board determined that procedures under which he was promoted were in violation of the county's personnel administration system.

## FACTS

On February 23, 1988, the Dakota County Board of Commissioners adopted a new

* Acting as judge of the Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 2.

personnel administration system authorized by special legislation, Minn.Stat. §§ 383D.21–.35. The rules of this personnel system are set forth in the Dakota County Employee Relations Policy and Procedures Manual. Pursuant to this manual, a Personnel Board of Appeals (PBA) was established to hear employee appeals regarding misinterpretation of personnel rules and make recommendations to the county board for final action.

Five positions of Correctional Team Leader in the Dakota County Sheriff's Department were among the first staff openings to be announced pursuant to the newly established personnel system. After examination procedures, respondent Allen Ochocki and four other persons were appointed to positions of Correctional Team Leader.

Subsequent to those appointments, unsuccessful applicants filed an appeal to the PBA claiming the selection procedure did not follow the rules set out in the manual. The PBA issued its findings on September 15, 1988, pursuant to a hearing held on September 7, 1988. The PBA found that the announcement for the position of team leader was faulty. The PBA also found the Dakota County Employee Relations Department failed to test and rate applicants utilizing a three-member oral board with one member from the Dakota County Employee Relations Department, one from the Dakota County Sheriff's office, and one from an outside law enforcement agency as required under the rules. The oral board which interviewed the applicants consisted of four persons, with two members from the Dakota County Sheriff's office. Having found the hiring process to be flawed, the PBA recommended that the promotion of five persons to team leader positions "be set aside and that the promotion opportunity be reannounced."

The Dakota County Board of Commissioners received the findings of the PBA on November 1, 1988. At its regularly scheduled meeting on November 22, 1988, the Dakota County Board of Commissioners rejected two of the original findings of the PBA, but agreed that the four-member oral board panel did not comply with the Dakota County personnel policy and procedures manual. The board remanded the case back to the PBA to conduct a new hearing of the appeal and to make findings regarding whether this error was seriously detrimental to the applicants not promoted. The PBA concluded after rehearing that the "inclusion of a second employee of the Dakota County Sheriff's Office on the Oral Board was seriously detrimental" to applicants who were not promoted. The PBA again recommended the board set aside the initial promotions of the five team leaders and reannounce those positions. The county board accepted the revised conclusions and recommendation of the PBA. The county board directed the employee relations department to set aside the initial hiring process and the promotion of the five team leaders and commence a hiring process for the team leader positions anew. The position was reposted and retested. In the subsequent round of testing, Ochocki's score did not entitle him to appointment as a Correctional Team Leader.

Ochocki is an honorably discharged veteran. He appealed his "removal" from the position of Correctional Team Leader to the Commissioner of Veterans Affairs pursuant to Minn.Stat. § 197.481 (1988). A contested case was heard by an Administrative Law Judge (ALJ). The main dispute before the ALJ was whether, on the stipulated facts, the county was required by hearing to establish incompetency or misconduct before Ochocki could be removed from the position despite the county's determination that the examination procedures under which Ochocki was promoted were fatally flawed making the promotion void.

The ALJ concluded that Ochocki was demoted from his position of Correctional Team Leader in violation of his veterans preference rights. The ALJ therefore recommended, and the Commissioner of Veterans Affairs ordered that Dakota County reinstate Ochocki to the position of Correctional Team Leader and restore to him any wages and benefits lost during the period of demotion. Dakota County appeals the Commissioner's order.

## ISSUE

Can a veteran be removed from a promotional position without a veterans preference removal hearing where the county board finds that procedures used in making the promotion were in violation of the county's personnel administration system?

## ANALYSIS

Agency decisions are presumed correct and will be reversed only when they reflect an error of law or when findings are arbitrary and capricious or unsupported by substantial evidence. *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 777 (Minn. 1980).

The facts in this case are stipulated. Therefore, we need only address whether the Commissioner erred in determining that, under these facts, Ochocki is entitled to veterans preference removal rights as a matter of law.

Minnesota has given honorably discharged veterans preference in public employment since 1907. *See* Act of April 19, 1907, ch. 263, 1907 Minn.Laws 355. Included is protection against unwarranted termination:

No person holding a position by appointment or employment in the several counties, cities, towns, school districts and all other political subdivisions in the state, who is a veteran separated from the military service under honorable conditions, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Minn.Stat. § 197.46 (1988).

The Minnesota Supreme Court has recognized an exception to the requirements of section 197.46 for removing a veteran from office. A public employer can terminate a veteran without establishing incompetence or misconduct when the veteran's position has been abolished in good faith. *State ex rel. Boyd v. Matson*, 155 Minn. 137, 141, 193 N.W. 30, 32 (1923).

The court in *Boyd* indicated its intent that the Veterans Preference Act should not render counties or public employers powerless to administer their civil service rules:

[I]t is well settled that statutes forbidding municipal officials from removing appointees except for cause are not intended to take away the power given such officials over the administrative and business affairs of the municipality, and do not prevent them from terminating the employment of an appointee by abolishing the office or position which he held, if the action abolishing it be taken in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position. [Cites omitted.] The municipal authorities may abolish the position held by an honorably discharged soldier and thereby terminate his employment, notwithstanding the so-called Veterans Preference Act.

*Id.*, at 141–2, 193 N.W. at 32.

Ochocki argues that since he was not terminated for incompetence or misconduct and because his position has not been abolished, Dakota County unlawfully removed him from the position of Correctional Team Leader.

Dakota County argues that for it to properly administer its personnel administration system, it must be permitted to enforce its own rules regarding competitive examinations and the job application process. This includes setting aside a flawed hiring process and retesting for the open positions.

No Minnesota court has addressed the question of whether a public employer can remove a veteran from a position when the employer in good faith voids the hiring or promotion decision because the initial examination procedure was not in accordance with the civil service rules. The Minnesota Supreme Court has discussed the effect of an improperly administered examination for appointment to public office in only one case. In addressing the importance of security of tenure in civil service the court stated:

Once civil service is established, there must be at least substantial compliance

with the laws and rules appertaining thereto if it is to be of any value. There would be little security afforded by civil service if that were not true. * * * Confusion results when municipal authorities seek to circumvent the established rules or to ignore them. If the examination and resulting certification did not comply with the laws and with the rules of the civil service commission, we cannot see that prejudice will result to anyone if a legal and proper examination be held now in order that applicants for the position involved may be duly and legally certified.

*State ex. rel Kruse v. Webster*, 231 Minn. 309, 315–16, 43 N.W.2d 116, 120 (1950).

Several foreign jurisdictions have held that where errors were made in the initial hiring process which violated civil service rules, those appointments have been considered void and the employee who is removed from office is not entitled to the usual civil service termination protections. In *Detoro v. City of Pittston*, 344 Pa. 254, 25 A.2d 299 (1942), the court stated an employment which in its inception violates the Civil Service Procedure Act is illegal and against public policy. "[I]t is the duty of the administrative officers of the state or its civil subdivisions to discontinue any illegal employment when they note its illegality." *Detoro*, 344 Pa. at 261, 25 A.2d at 303.

In *Detoro*, the plaintiff claimed his civil service rights were violated because he was discharged without any charge of misconduct against him. The court found that the plaintiff was not entitled to the statutory protections against termination granted under the civil service acts because the basis of the discharge was that the plaintiff "never acquired the status of civil service." *Id.* at 262, 25 A.2d at 303.

In *Municipality of Penn Hills v. Municipality of Penn Hills Personnel Board/Civil Service Commission*, 87 Pa. Commw. 552, 487 A.2d 1048 (Pa.Commw. Ct.1985), the Commonwealth Court in Pennsylvania upheld a board's decision to set aside several promotions which were appointed in contravention of a city hiring ordinance. The court held that:

> [B]efore one may invoke the protections afforded [by the civil service laws], one must show that an appointment or promotion was in accordance with the laws in effect at the time of the appointment or promotion. In this case, the Municipality is not attempting to remove the appellees from the force; all that is being done is removing appellees from the position to which they were promoted not in accordance with law. Under such circumstances, the civil service protections are not applicable and the trial court erred in affirming the Commission's reinstatement of appellees to the position of specialist.

*Id.* at 557, 487 A.2d at 1050–51.

Similarly, the Court of Appeals of Washington stated that:

> [T]o carry out the purposes of the civil service system, we hold that it is beyond the authority of the public employer or the board to give an employee the benefits of civil service when the employee has not been hired according to the required procedures. To hold otherwise would allow a circumvention of the merit system [of hiring].

*State ex rel. Pioli v. Higher Education Personnel Board*, 16 Wash.App. 642, 645, 558 P.2d 1364, 1367 (1976).

The Supreme Court of Connecticut has also said that "[o]ne of the commonly accepted purposes and functions of civil service is that appointments be made from lists of properly examined and qualified personnel." *Resnick v. Civil Service Commission of the City of Bridgeport*, 156 Conn. 28, 31, 238 A.2d 391, 392 (1968). "Good faith of the parties will not validate an illegal appointment and will not be sanctioned by the courts." (citations omitted). *Id.* at 32, 238 A.2d at 393.

Finally, the California Supreme Court in *Ferdig v. State Personnel Board*, 71 Cal.2d 96, 77 Cal.Rptr. 224, 453 P.2d 728 (1969), stated that the state personnel board "shall administer and enforce the civil service laws." *Id.* at 105, 77 Cal.Rptr. at 229, 453 P.2d at 733. The court then

reaffirmed previous holdings that "appointments in violation of the civil service laws are void" and that the appropriate board has jurisdiction to correct unlawful actions previously taken. *Id.* at 107, 77 Cal.Rptr. at 231, 453 P.2d at 735.

Although these cases deal with civil service rather than veterans preference rights, they support our conclusion that a county has the right and power to correct a hiring decision made in violation of its personnel administration rules. Here, the county was not attempting to exercise an arbitrary power to remove Ochocki from his position of Correctional Team Leader. Rather, Dakota County was attempting, in good faith, to correct a flawed hiring process. *See State ex rel. Niemi v. Thomas,* 223 Minn. 435, 27 N.W.2d 155 (1947) (Veterans Preference Law did not prevent village council from in good faith abolishing an office or position it had power to create).

The PBA and the county board determined that the process under which Ochocki and four others were promoted was flawed and the promotions void. That determination was never directly challenged. Since Ochocki never rightfully held the position of Correctional Team Leader, he did not acquire veterans preference rights to that position. Therefore, the county did not violate Ochocki's veterans preference rights in removing him without a hearing and we reverse the Commissioner of Veterans Affairs' order requiring his reinstatement.

## DECISION

Dakota County did not violate Allen Ochocki's veterans preference rights by removing him from a position to which he was promoted under procedures which violated the county's personnel administration system.

Reversed.

**EDWARD D. MULALLY,** Judge, dissenting.

I respectfully dissent.

The Commissioner properly concluded, on the facts and law of this case, that in violation of the Minnesota Veterans Preference Law respondent was improperly removed from his position as correctional team leader, and should be reinstated.

The parties agree that there are no Minnesota cases that allow a veteran to be removed from public employment in a fact situation similar to this.

The majority states the issue in this matter as:

Can a veteran be removed from a promotional position without a veterans preference removal hearing where the county board finds that procedures used in making the promotion were in violation of the county's personnel administration system?

To restate the issue in the context of these facts:

Can a veteran be removed from a promotional position without a veterans preference hearing where a county board (and, presumably, the governing body of any other governmental unit) conducts a promotional examination; promotes a veteran on the basis of the results of the examination; after the veteran has been in the position for almost a year, because of pressure from unsuccessful candidates decides that the examination was flawed; conducts another examination; on the basis of the reexamination removes the veteran from the position; and appoints another person to the same position from which the veteran has been removed?

It is very clear that in Minnesota there are three grounds on which a veteran can be removed from public employment. They are set out in *Young v. City of Duluth:*

[P]ublic employers have only three grounds on which to base a termination of a veteran. The Act allows a termination for "incompetency" or "misconduct" and [*State ex rel. Boyd v. Matson,* 155 Minn. 137, 193 N.W. 30 (1923)] permits a public employer to, in good faith, abolish a position held by a veteran. The Act specifically requires a public employer removing a veteran from employment

to provide written notice of his or her veterans preference rights.

*Id.,* 386 N.W.2d 732, 738 (Minn.1986).

It is stipulated between the parties that here there is no claim of incompetence or misconduct. The only other way in which a veteran can be removed from public employment is if the position from which the veteran is removed is, in good faith, abolished.

Here, of course, the position of Correctional Team Leader was not abolished. The duties of that particular position were merely assigned to another person. To contend that after almost one year in the job Ochocki was a temporary employee, and never rightfully held the position is unrealistic.

Based upon decisions from other jurisdictions interpreting their *civil service* laws,

the majority has created a fourth ground on which to base the termination of a veteran from governmental employment. Apparently, this new ground for termination holds that when the Veterans Preference law conflicts with a governmental unit's personnel administration system the Veterans Preference law does not apply.

I cannot accept that as being the law in Minnesota, and I respectfully dissent from the majority opinion.

The order of the Commissioner of Veterans Affairs should be affirmed.